DISTRICT JUDGE BENJAMIN H. SETTLE
MAGISTRATE JUDGE KAREN L. STROMBOM

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA**

| | |
|---|---|
| JASON CHRISTEN a/k/a MALACHI MACGREGOR-REIGN,<br><br>                        Plaintiff,<br><br>    v.<br><br>WASHINGTON DEPARTMENT OF CORRECTIONS, et al.,<br><br>                        Defendants. | NO.  C10-5250-BHS-KLS<br><br>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF<br><br>NOTED FOR:  12/16/11 |

## I.    MOTION

Defendants Washington State Department of Corrections (DOC), Pat Glebe, Dennis Dahne, Sheri Obenland, and Devon Schrum, by and through their attorneys of record, ROBERT M. MCKENNA, Attorney General, and SARA J. DI VITTORIO, Assistant Attorney General, submit the following motion for summary judgment and memorandum in support thereof pursuant to Fed. R. Civ. P. 56.

## II.    MEMORANDUM

### A.    Introduction

Plaintiff, Jason Christen, is currently in the custody of the Washington State Department of Corrections (DOC) at Monroe Correctional Complex, Washington State Reformatory Unit in Monroe, Washington.   Exhibit 1, Declaration of Dawn Walker, Attachment A, Offender Management Network Information, Legal Face Sheet, at 2.  Plaintiff

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

1

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

was incarcerated at the Washington Corrections Center in Shelton, Washington during the time period relevant to his complaint.  *See* Complaint.  Plaintiff has filed a civil rights complaint under 42 U.S.C. § 1983 alleging that the Defendants violated his First, Eighth, and Fourteenth Amendment rights by not processing his grievances.

**B.   Issues Presented**

A.     Whether Plaintiff has failed to state a claim?

B.     Whether Plaintiff's claims against Defendant Glebe should be dismissed for failure to allege personal participation?

C.     Whether Defendant DOC is entitled to Eleventh Amendment immunity?

D.     Whether Defendants are entitled to qualified immunity?

### III.     SUMMARY OF THE ARGUMENT

Plaintiff's Complaint should be dismissed because his constitutional rights were not violated by Defendants.  Additionally, Plaintiff has failed to establish that Defendant Glebe personally participated in the alleged violations.  Moreover, Defendant DOC is immune from suit under the Eleventh Amendment.  Finally, Defendants are entitled to qualified immunity.

### IV.     STATEMENT OF THE FACTS

There is a grievance procedure available to DOC inmates, including those incarcerated at WCC.  The Washington Inmate Grievance Program (OGP) has been in existence since the early 1980's and was implemented on a department-wide basis in 1985.  Exhibit 2, Declaration of Tamara Rowden, ¶ 4.  Under Washington's grievance system, an inmate may file a grievance over a wide range of aspects of his/her incarceration.  *Id.* ¶ 5.  Inmates may file grievances challenging: 1) Department of Corrections institution policies, rules and procedures; 2) the application of such policies, rules and procedures; 3) the lack of policies, rules or procedures that directly affect the living conditions of the inmate; 4) the actions of staff and volunteers; 5) the actions of other inmates; 6) retaliation by staff for filing grievances; and 7) physical plant conditions.  An inmate may not file a grievance challenging 1) state or federal

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

2

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

law; 2) court actions and decisions; 3) Indeterminate Sentence Review Board actions and decisions; 4) administrative segregation placement or retention; 5) classification/unit team decisions; 6) transfers; 7) disciplinary actions; and several other aspects of incarceration.  *Id.* The Washington grievance system provides a wide range of remedies available to inmates.  *Id.* ¶ 6.  These remedies are outlined in OGP 015 and include 1) restitution of property or funds; 2) correction of records; 3) administrative actions; 4) agreement by department officials to remedy an objectionable condition within a reasonable time; and 5) a change in a local or department policy or procedure.  *Id.*

The grievance procedure consists of four levels of review.  *Id.* ¶ 7.  At Level 0, the Complaint or informal level, the inmate writes a complaint, the grievance coordinator then pursues informal resolution of the issue, returns the complaint to the inmate for additional information, or accepts the complaint and processes it as a formal grievance.  *Id.*  At Level I, the local grievance coordinator responds to the issues raised by the inmate.  *Id.*  If the inmate is not satisfied with the response to his Level I grievance, he may appeal the grievance to Level II.  *Id.*  All appeals and initial grievances received at Level II are investigated, and the prison superintendent responds.  *Id.*  If the inmate is still not satisfied with the response, he may make a Level II appeal to the Department headquarters, where the issue is reinvestigated and administrators respond.  *Id.*  An offender may have up to five grievances processed at one time or may file five grievances per week.  *Id.*  Additionally, if an offender experiences an event that qualifies as an "emergency", he may file an emergency grievance which does not count as one of the five grievances.  *Id.*

When an offender legally changes his name, he is still required to use the name under which he was committed to DOC custody in "any written or verbal communication with staff." Exhibit 3, Declaration of Dell-Autumn Witten, Attachment A, DOC Policy, 400.280, Offender Legal Name Change.  DOC Policy 400.280 also allows an offender to "add the legally changed

*///*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

3

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

1  name after the committed name using an 'Also Known As' (AKA) designation for the legally

2  changed name." *Id.*  This policy applies to grievances.  *Id.*

3        Mr. Christen alleges that he has legally changed his name to Malachi Macgregor-Reign.

4  *See* Exhibit 2, Attachment D, Grievance Log I.D. Number 0913965.  Mr. Christen has not

5  provided documentation to this Court in support of this assertion.  *Id.*  However, Defendants do

6  not refute that his name has been legally changed.

7        Between April 1, 2009 and July 31, 2009, Mr. Christen submitted 50 grievances to

8  WCC staff.  Exhibit 2, Attachment A, B, C, and D, Grievances.  On each of these grievances,

9  Mr. Christen altered the grievance form by crossing out the words "Mandatory", "Signature",

10  and "Date" on the signature line.  *Id.*  He then signed the document by writing "Jason M.

11  Christen", with a line through the signature, essentially crossing it out.  *Id.*  Mr. Christen then

12  wrote "ARR/WOP" next to the crossed out signature.  *Id.*  On many of these grievances, he also

13  wrote "UCC 1-207" next to his signature.  *Id.*  At no time did Mr. Christen use the name

14  Malachi Macgregor-Reign when signing his grievances dated April 1, 2009 through July 31,

15  2009.  Twenty-one (21) of these grievances were not processed because they failed to comply

16  with DOC Policy 400.280 and because they cited to legal codes.  *Id.*, Attachments A and C.  Mr.

17  Christen was given the opportunity to re-write each of these grievances and failed to do so.  *Id.*

18  The remaining 29 grievances were denied because they were non-grievable issues.  *Id.*,

19  Attachment B.  In one of the 50 grievances, dated April 21, 2009, Mr. Christen grieved being

20  placed in a cell with an offender who had MRSA.  *Id.*, Attachment C.  No other grievances were

21  filed on this issue during this timeframe or after.  *Id.*, Attachments A, B, and D.  In a grievance

22  filed June 30, 2009, Mr. Christen grieved the refusal of staff to process his grievances based on

23  his signature.  *Id.*, Attachment D.  This grievance was processed as detailed below.  *Id.*

24        On or about April 24, 2009, Mr. Christen met with Defendants Dahne and Obenland

25  regarding this grievance.  Exhibit 4, Declaration of Sheri Obenland; Exhibit 5, Declaration of

26  Dennis Dahne.  During this meeting, Defendants Dahne and Obenland again gave Mr. Christen

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

4

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

1   the opportunity to correct his signature on his grievances to comply with DOC Policy.  *Id.*  Mr.

2   Christen explained that "ARR" meant "All Rights Reserved" and "WOP" meant "Without

3   Prejudice."  Exhibit 5.  Mr. Christen refused to explain the meaning of "UCC 1-207" and

4   instead argued that this was his "legal signature" and the way he "signed everything."  *Id.*

5   Defendant Dahne informed Mr. Christen that he could re-write and re-submit the grievances

6   using the name "Jason Christen" and that he was not permitted to alter the form by crossing out

7   the words around the signature block.  *Id.*  He also instructed him not to reference the legal code

8   "UCC 1-207" in his signature block.  *Id.*  During this meeting Mr. Christen also informed

9   Defendants Dahne and Obenland that his signature indicated his "religious name" and that

10  requiring him to change it violated his religious rights.  Exhibit 4.  Defendant Obenland asked

11  Mr. Christen if he had legally changed his name and if he had, to provide documentation of the

12  name change in accordance with DOC Policy 400.280.  *Id.*  Mr. Christen never provided such

13  documentation to Defendants during this timeframe.  *Id.*

14         Mr. Christen was informed on April 24, 2009, that he could contact the Offender

15  Grievance Manager, Defendant Schrum, to review the denials of his grievances.  Exhibit 6,

16  Declaration of Devon Schrum.  Mr. Christen did not contact Ms. Schrum until June 24, 2009.

17  Exhibit 6, Attachment A, Letter.  Defendant Schrum replied to Mr. Christen's letter on June 25,

18  2009, informing Mr. Christen that his grievances would be processed.  Exhibit 6, Attachment B,

19  Correspondence Reply.  Mr. Christen's grievances filed after this date were processed, if they

20  were within the 5 grievance per week/processed at one time limit and if they contained grievable

21  issues.  Exhibit 6.  On July 29, 2009, Defendant Schrum met personally with Mr. Christen.  *Id.*

22  During that meeting, Defendant Schrum informed Mr. Christen that he could use any signature

23  he liked on his grievances as long as he followed that non-committed name with his committed

24  name after an AKA designation, in accordance with DOC Policy 400.280.  *Id.*  During that

25  meeting, Mr. Christen was also informed that he could re-submit any grievances he wished, five

26  at a time, in accordance with the OGP, and that the grievances would be processed.  Exhibits 4,

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

5

5, and 6.  Mr. Christen did not re-submit his grievances, including his grievance challenging his assignment to a cell with an offender who had MRSA.  *Id.*

In his Amended Complaint, Mr. Christen asserts that Defendant Dahne sent him correspondence wherein Defendant Dahne signed his name and wrote "UCC 1-207" next to his name.  *See* Amended Complaint at 11.  Defendant Dahne did not do this and the document Mr. Christen references belies Mr. Christen's assertion to the contrary.  Exhibit 5, ¶ 7; Exhibit 2, Attachment D.

## V.     EVIDENCE RELIED UPON

Defendants rely upon this motion with the attached declarations of Dawn Walker, Tamara Rowden, Dell-Autumn Witten, Sheri Obenland, Dennis Dahne, and Devon Schrum and attachments thereto and the records and files maintained herein.

## VI.     STANDARD OF REVIEW

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court.  *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir. 1975), *cert. denied*, 423 U.S. 1025 (1975).  The moving party is entitled to summary judgment if the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).

The court must determine if a fair-minded jury could return a verdict for the non-moving party.  *Anderson*, 477 U.S. at 252.  The party seeking summary judgment must show that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law by showing that there is an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  To determine if summary judgment is appropriate, the court must consider whether a particular fact is material and whether there is a genuine dispute as to that fact left to be resolved.  These considerations must be made in light of the appropriate standard of proof.  *Anderson*, 477 U.S. at 248. Factual disputes that do not affect the outcome of the suit under governing law will not be

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

6

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

considered. *Id.* Where there is a complete failure of proof concerning an essential element of the non-moving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 324; *see also Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) (Holding that failure to "make a sufficient showing of an essential element" of one's case requires dismissal).

Once the moving party has carried its burden under Rule 56, the party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

The Ninth Circuit has expressly stated that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988). A Plaintiff cannot rest upon the allegations in his complaint, but must establish each element of his claim with "significant probative evidence tending to support the complaint." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987). A party opposing a motion must present facts in evidentiary form and cannot rest upon the pleadings. *Anderson*, 477 U.S. 242. Genuine issues of material fact are not raised by conclusory or speculative allegations. *Lujan*, 497 U.S. at 871. The purpose of summary judgment is not to replace conclusory allegations in pleading form with conclusory allegations in an affidavit. *Lujan*, 497 U.S. at 888; *cf. Anderson*, 477 U.S. at 249. Bare assertions unsupported by evidence do not preclude summary judgment. *California Architectural Bldg. Prods., supra*. Under these standards, Plaintiff's case should be dismissed as a matter of law.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

7

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

# VII.   ARGUMENT

A.   **Plaintiff's Amended Complaint Should Be Dismissed For Failure To State A Claim**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met:  (1) the defendant must be a person acting under color of state law; and (2) his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).  Implicit in the second element is a third element of causation.  *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 875 (1980).  When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.  The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law."  *Parratt*, 451 U.S. at 532.  The plaintiff may have suffered harm, even due to another's negligent conduct, but that does not in itself necessarily demonstrate an abridgement of Constitutional protections.  *Davidson v. Cannon*, 474 U.S. 344 (1986).

In the present case, Plaintiff claims violations of his rights under the First, Eighth, and Fourteenth Amendments.  Plaintiff has not established sufficient facts to support a claim under any of these amendments.  Plaintiff's claims regarding the failure to process his grievances fail as a matter of law.

1.   **Plaintiff's Claims Regarding Failure To Process Grievances Must Be Dismissed As A Matter Of Law**

Inmates have no constitutional right to a prison grievance system.  *Mann v. Adams*, 855 F.2d 639 (9th Cir. 1988), *cert. denied*, 109 S. Ct. 242 (1988); *Stewart v. Block*, 938 F. Supp. 582 (C.D. Cal. 1996); *Hoover v. Watson*, 886 F. Supp. 410 (D. Del. 1995) (*aff'd*, 74 F.3d 1226).  Moreover, if the state elects to provide a grievance mechanism, violations of its

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF - NO.  C10-5250-BHS-KLS

8

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

1    procedures do not give rise to § 1983 claims.  *Hoover v. Watson, supra,; Brown v. G.P.*

2    *Dodson*, 863 F. Supp. 284, 285 (W.D. Va. 1994); *Allen v. Wood*, 970 F. Supp. 824, 832 (E.D.

3    Wash. 1997).  Plaintiff's claims that Defendants Obenland, Dahne, and Schrum failed to

4    process his grievances do not violate his constitutional rights; therefore, his claims must fail

5    as a matter of law.

### 2.    Plaintiff's First Amendment Claims Fail As A Matter Of Law

#### a.    Defendants Did Not Impose A Prior Restraint On Mr. Christen's Freedom Of Speech

8        Even if Plaintiff could establish a legal entitlement to have his prison grievances

9    handled in a particular way, his claim fails factually.  The Prison Litigation Reform Act

10   ("PLRA") requires inmates to exhaust available administrative remedies prior to their filing

11   suit in federal court under 42 U.S.C. § 1983.  *See* 42 U.S.C. § 1997e(a) (2000); *Booth v.*

12   *Churner*, 532 U.S. 731, 735, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).  This means that a

13   prisoner must file any grievances, complaints, and appeals he has concerning his prison

14   conditions in the time, place, and manner required by the prison's administrative rules.  *Pozo*

15   *v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *see also Marella v. Terhune*, 568 F.3d

16   1024, 1028 (9th Cir. 2009) (A prisoner must comply with a prison''s procedural

17   requirements).  Mr. Christen was given the opportunity to resubmit his grievances because

18   the grievances he submitted did not follow the requirements of the OGP or DOC Policy

19   400.280 because Mr. Christen refused to sign his grievances with his committed name.

20   Although Mr. Christen may object to or disagree with the basis for his grievances being

21   rejected, his grievances violated the conditions for the manner required by the prison's

22   administrative rules for filing grievances.  Mr. Christen was clearly aware that his remedy

23   was to resubmit his grievances and he chose not to avail himself of that remedy.

24       Mr. Chirsten's allegation that the denial of his grievances was a prior restraint on his

25   free speech is without merit.  The Supreme Court explained in *Ward v. Rock Against Racism,*

26   "[T]he regulations we have found invalid as prior restraints have 'had this in common: they

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

9

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

gave public officials the power to deny use of a forum in advance of actual expression.' "
*Ward v. Rock Against Racism,* 491 U.S. 781, 795 n. 5, 109 S.Ct. 2746, 105 L.Ed.2d 661
(1989) (quoting *Southeastern Promotions Ltd. v. Conrad,* 420 U.S. 546, 553, 95 S.Ct. 1239,
43 L.Ed.2d 448 (1975)).  *But see FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225-30, 110
S.Ct. 596, 107 L.Ed.2d 603 (1990) (invalidating as an impermissible prior restraint a
licensing ordinance regulating the use of private property).   A prior restraint need not
actually result in suppression of speech in order to be constitutionally invalid.  "The relevant
question [in determining whether something is a prior restraint] is whether the challenged
regulation *authorizes* suppression of speech in advance of its expression. . . ."  *Ward,* 491
U.S. at 795 n. 5, 109 S.Ct. 2746.

Mr. Christen's speech was not restrained.  Mr. Christen's grievances were not denied
based on their content, rather they were denied because he did not comply with the
procedural requirements put in place by DOC for the submission of grievances and written
communication with DOC staff.   None of the Defendants restricted Mr. Christen's speech
either in advance of or after his expression.   Rather, Defendants enforced legitimate
procedures and policies governing the manner in which grievances are submitted.  This is
permissible.  *See* Pozo, 286 F.3d at 1025; *see also Marella*, 568 F.3d at 1028.  Thus, Mr.
Christen's First Amendment freedom of speech claim fails as a matter of law and Defendants
are entitled to summary judgment.

### b.       Defendants Did Not Violate Mr. Christen's Right To Freely Exercise His Religion

In order to establish a First Amendment violation, Plaintiff "must show that
[defendant] burdened the practice of [his] religion, by preventing [him] from engaging in
conduct mandated by [his] faith, without any justification reasonably related to legitimate
penological interests." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997) (citing *Turner
v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254 (1987) (footnote omitted)).   "In order to reach the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

10

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

1  level of a constitutional violation, the interference with one's practice of religion 'must be more

2  than an inconvenience; the burden must be substantial and an interference with a tenet or belief

3  that is central to religious doctrine.'" *Freeman*, 125 F.3d at 737 (citing *Graham v. C.I.R.*, 822

4  F.2d 844, 851 (9th Cir. 1987)).  "This standard reflects the view that prison administrators,

5  and not the courts, should resolve difficult and complex questions of institutional operations.

6  Further, the standard is necessary so that courts avoid becoming the ultimate arbiters of every

7  administrative problem in correctional institutions."  *Allen v. Wood*, 970 F. Supp. 824, 829

8  (E.D. Wash., 1997), *citing  Turner*, 482 U.S. at 89, 107 S. Ct. at 2261-62.

9        Plaintiff must also show that the burden inflicted upon him by Defendants is

10  substantial and that it interfered with a "tenet or belief that is central to" his religion.  *Id.* at

11  737 (*quoting Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)).  "In order to reach the

12  level of a constitutional violation, the interference with one's practice of religion 'must be

13  more than an inconvenience; the burden must be substantial and an interference with a tenet

14  or belief that is central to religious doctrine.'"  *Freeman*, 125 F.3d at 737 (citing *Graham v.*

15  *C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)).

16        Plaintiff claims that Defendants Obenland, Dahne, Schrum, and Glebe violated his

17  right to religious freedom by "dishonoring his signature."  *See* Docket No. 10 at 15.  Plaintiff

18  has not met his burden in demonstrating a violation of his First Amendment rights.  Plaintiff

19  has not identified what religion he was attempting to practice by signing his grievances in the

20  manner he chose to sign them, nor has he provided any evidence to demonstrate that signing

21  documents in that manner was a central tenet or belief of that religion.  As a result, Plaintiff

22  cannot demonstrate a First Amendment violation.

23        Even if Plaintiff meets his burden of demonstrating that his manner of signing

24  grievances is a central tenet or belief of his religion, he cannot demonstrate that Defendants

25  actions imposed a substantial burden on that exercise.  All that Plaintiff was required to do

26  ///

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

11

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

1    was list his legal name after his committed name to process his grievances, yet he refused

2    this simple procedure.

3         Assuming, *arguendo*, that Plaintiff is challenging the constitutionality of DOC Policy

4    400.280, his challenge fails as a matter of law.   A prison regulation that infringes on a

5    constitutional right is valid if it "is reasonably related to legitimate penological interests."

6    *Turner*, 482 U.S. at 89.   The *Turner* court adopted the following rational relationship test to

7    determine if a regulation is valid: "when a prison regulation impinges on inmates'

8    constitutional rights, the regulation is valid if it is reasonably related to legitimate penological

9    interests."   *Id.* at 89.   The *Turner* standard acknowledges the deference to be accorded to

10   prison officials in the "difficult judgments concerning institutional operations."   *Id.*   The

11   court provided four factors to guide reviewing courts in determining the reasonableness of

12   the regulation.   "First, there must be a 'valid, rational connection' between the prison

13   regulation and the legitimate governmental interest put forward to justify it."   *Id.* (citations

14   omitted).   A second factor is "whether there are alternative means of exercising the rights that

15   remain open to prison inmates."   *Id.* at 90.   The third consideration is the "impact

16   accommodation of the asserted constitutional right will have on guards and other inmates,

17   and the allocation of prison resources generally."   *Id.*   Finally, the court said "absence of

18   ready alternatives is evidence of the reasonableness of the regulation."   *Id.*

19        In *Malik v. Brown*, 16 F.3d 330, the Ninth Circuit expressly held that although an

20   inmate has the constitutional right to use his or her legal name, the Department of

21   Corrections has a legitimate penological interest in the use of the inmate's committed name.

22   *Malik v. Brown*, 16 F.3d 330, 334 (9th Cir. 1994), *mandate recalled*, 65 F.3d 148 (9th Cir.

23   1995), *appeal after remand*, 71 F.3d 724 (9th Cir. 1995).   The Malik court cited to the

24   legitimate penological interests as "order, security, and administrative efficiency."   *Id.* citing

25   *Felix v. Rolan*, 833 F.2d 517, 519 (5th Cir. 1987).   DOC Policy 400.280, which requires the

26   usage of both the legal name and the committed name is clearly rationally related to this

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

12

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

1  legitimate penological interest.  An offender has the ability to exercise his right to use his

2  religious name, he simply must also use his committed name on written communications

3  with staff.  Allowing an offender to use only his legal name, the name he was not committed

4  under, would have a severe impact on order, security, and administrative efficiency within

5  DOC.   Finally,  the  alternative  of  allowing  an  offender  to  use  both  names  clearly

6  accommodates his rights.  Thus, the *Turner* factors are met and Defendants are entitled to

7  judgment as a matter of law.

8         **3.      Plaintiff Has Failed To State A Claim Under The Eighth Amendment**

9         Inmates alleging Eighth Amendment violations based on prison conditions must

10  demonstrate that prison officials were deliberately indifferent to their health or safety by

11  subjecting them to a substantial risk of serious harm.  *Farmer v. Brennan*, 511 U.S. 825, 834,

12  114 S. Ct. 1970(1994); *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995).   Prison

13  officials display a deliberate indifference to an inmate's well-being when they consciously

14  disregard an excessive risk of harm to the inmate's health or safety.  *Farmer*, 511 U.S. at

15  838-40; *Wallis*, 70 F.3d at 1077.  Plaintiff's claims must satisfy both the objective and

16  subjective components identified in the previous section.

17         The Eighth Amendment standard requires proof of both the objective and subjective

18  component.  *Hudson v. McMillian*, 503 U.S. 1, 112 S. Ct. 995 (1992).  First, the deprivation

19  alleged must objectively be sufficiently serious, resulting in a denial of the "minimal

20  civilized measures of life's necessities."   *Farmer*, 511 U.S. at 834 (quoting *Rhodes v.*

21  *Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392 (1981)).  In proving the objective component,

22  an inmate must establish that there was both some degree of actual or potential injury, and

23  that society considers the [acts] that the plaintiff complains of to be so grave that it violates

24  contemporary standards of decency to expose anyone unwillingly [to those acts].  *Helling v.*

25  *McKinney*, 509 U.S. 25, 36, 113 S. Ct. 2475(1993); *see also Estelle v. Gamble*, 429 U.S. 97,

26  102, 97 S. Ct. 285(1976).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

13

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

1   Second is the subjective component that the prison official possesses a sufficiently

2   culpable state of mind:  "deliberate indifference to inmate health and safety."  *Farmer*, 511

3   U.S. at 834-36.  With regard to deliberate indifference, a prison official is not liable "unless

4   the official knows of and disregards an excessive risk to inmate health or safety; the official

5   must both be aware of facts from which the inference could be drawn that a substantial risk

6   of serious harm exists, and he must also draw the inference."  *Id.* at 837.  The subjective

7   component requires proof that the official was: 1) aware of the facts that would lead a

8   reasonable person to infer the substantial risk of serious harm; 2) actually made the inference

9   that the substantial risk of serious harm to the plaintiff existed; and 3) knowingly disregarded

10  the risk.  *Id.*  The Court in *Farmer* explained:

11  
12          [p]rison officials charged with deliberate indifference might show, for
            example, that they did not know of the underlying facts indicating a
            sufficiently substantial danger and that they were therefore unaware of a
13          danger, or that they knew the underlying facts but believed (albeit unsoundly)
            that the risk to which the facts gave rise was insubstantial or nonexistent.  In
14          addition, prison officials who actually knew of a substantial risk to inmate
            health or safety may be found free from liability if they responded reasonably
15          to the risk, even if the harm ultimately was not averted.

16  *Farmer*, 511 U.S. at 844.  If either of these components is not established, the court need not

17  inquire as to the existence of the other.  *Helling*, 509 U.S. at 35.

18          The basis for Plaintiff's Eighth Amendment claim is unclear.  Plaintiff seems to

19  suggest that because his grievance wherein he grieved his placement in a cell with an

20  offender with MRSA was refused, this resulted in cruel and unusual punishment.  If this

21  assumption is accurate, Plaintiff's claim fails as a matter of law.  Plaintiff cannot demonstrate

22  that Defendants were aware of and disregarded a substantial risk of serious harm.  Plaintiff

23  has not demonstrated that Defendants knew that by returning his grievance to him and giving

24  him the opportunity to re-write the grievance in accordance with the OGP and DOC Policy

25  400.280, he was at substantial risk of serious harm.  Plaintiff himself had the ability to

26  address this concern by re-writing his grievance, his failure to do so should not result in a

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

14

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

1    finding that Defendants violated his Eighth Amendment rights.  Defendants' actions were not

2    in violation of either the objective or the subjective prongs of the Eighth Amendment

3    analysis.  Defendants are entitled to summary judgment on this claim as a matter of law.

4        **4.      Plaintiff Has Failed To State A Claim Under The Fourteenth Amendment**

5            Plaintiff's Fourteenth Amendment claim alleges that because his grievances were

6    rejected, he was denied access to administrative remedies.  As argued above, Plaintiff's access

7    to the grievance program was squarely within his control – all he need do is comply with the

8    OGP and DOC Policy 400.280.  Plaintiff's refusal to comply with the required procedures and

9    the Defendants enforcement of those procedures does not create a Fourteenth Amendment

10   violation.  Additionally, Plaintiff was given the opportunity to re-submit any and every one of

11   his grievances throughout the months of April, May, and June 2009.  Plaintiff refused to do so.

12   Plaintiff's refusal prevented him from accessing his administrative remedies; Defendants actions

13   did not deprive him of this right.  As such, Defendants are entitled to summary judgment as a

14   matter of law.

15   **B.     Plaintiff's Claims Against Defendant Glebe Should Be Dismissed For Failure To**

16   **      Allege Personal Participation Of Defendants**

17           In order to obtain relief against a defendant under 42 U.S.C. § 1983, a plaintiff

18   must prove that each defendant has caused or personally participated in causing the

19   deprivation of a particular protected constitutional right.  *Arnold v. IBM*, 637 F.2d 1350,

20   1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (1977).  To be liable for

21   "causing" the deprivation of a constitutional right, the particular defendant must commit

22   an affirmative act, or omit to perform an act, that he or she is legally required to do, and

23   which causes the plaintiff's deprivation.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.

24   1978).

25           The inquiry into causation must be individualized and focus on the duties and

26   responsibilities of each individual defendant whose acts or omissions are alleged to have

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

15

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

1   caused a constitutional deprivation.  *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988);

2   *see also Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976).   Sweeping conclusory

3   allegations against an official are insufficient to state a claim for relief.   The plaintiff

4   must set forth specific facts showing a causal connection between each defendant's

5   actions and the harm allegedly suffered by plaintiff.  *Aldabe v. Aldabe*, 616 F.2d 1089,

6   1092 (9th Cir. 1980); *Rizzo*, 423 U.S. at 371.

7          Defendants in a 42 U.S.C. § 1983 action cannot be held liable based on a theory of

8   *respondeat superior* or vicarious liability.  *Polk County v. Dodson*, 454 U.S. 312, 325

9   (1981).  "At a minimum, a § 1983 plaintiff must show that a supervisory official at least

10  implicitly authorized, approved, or knowingly acquiesced in the unconstitutional

11  conduct." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984), *cert. denied*, 469 U.S.

12  845 (1984).  A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis

13  of supervisory responsibility or position.  *Monell v. Dept. of Social Services of City of*

14  *New York*, 436 U.S. 658, 694 n.58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir.

15  1982).  Vague and conclusory allegations of official participation in civil rights violations

16  are not sufficient.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992).  Absent some

17  personal involvement by the defendants in the allegedly unlawful conduct of

18  subordinates, they cannot be held liable under 42 U.S.C. § 1983.  *Johnson*, 588 F.2d at

19  743-44.

20         Plaintiff has failed to state how Defendant Glebe was involved with the obstruction of

21  his grievances.  In his Amended Complaint, Mr. Christen alleges only that Defendant Glebe

22  "received several pieces of correspondence from Plaintiff" and that Defendant Glebe "turned a

23  blind eye on what was taking place in his facility under his watch."  *See* Amended Complaint at

24  12.  Thus, it appears Defendant Glebe was named in this suit based on his role as Superintendent

25  of WCC and not because of any of his own involvement with the acts alleged.  Defendant Glebe

26  cannot be held liable based on a theory of *respondeat superior*.  Absent personal involvement,

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS                    16                    ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

1  Defendant Glebe cannot be held liable.   Therefore, Plaintiff's claims against Defendant

2  Glebe should be dismissed as a matter of law.

3  **C.      Plaintiff's Federal Claims Against DOC Are Barred By The Eleventh
        Amendment**

4

5       "[N]either a State nor its officials acting in their official capacities are 'persons' under §

6  1983."  *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989).   "[A] suit against a state

7  official in his or her official capacity is not a suit against the official but rather is a suit against

8  the official's office.  As such, it is no different from a suit against the State itself."  *Id.* (citations

9  omitted).  The State is entitled to immunity under the Eleventh Amendment and cannot be sued

10  in federal or state court by a citizen unless the State or state agency has consented to the suit.

11  *Alden v. Maine*, 527 U.S. 706 (1999); *see also Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974).

12  Absent an Act of Congress or state action expressly waiving Eleventh Amendment

13  immunity, the Eleventh Amendment has consistently been applied to bar suits for damages

14  against the state in federal court.   In *Quern v. Jordan*, 440 U.S. 332 (1979), and *Edelman*,

15  *supra*, the Supreme Court ruled that Congress did not intend to waive Eleventh Amendment

16  immunity in 42 U.S.C. § 1983 actions.   Where there is no state waiver, the Eleventh

17  Amendment prohibits suits for damages against the state in federal or state court.  The State

18  of Washington has not waived the protections granted by the Eleventh Amendment.  *Edgar v.*

19  *State*, 92 Wn.2d 217, 595 P.2d 534 (1979).  Therefore, Plaintiff's federal claims against DOC

20  are barred under the Eleventh Amendment and DOC should be dismissed from this lawsuit as

21  a matter of law.

22  **D.      Defendants Are Entitled To Qualified Immunity**

23       Defendants did not violate Plaintiff's constitutional rights; however, if they did, they

24  are entitled to qualified immunity from damages.  Under the doctrine of qualified immunity,

25  prison officials are "shielded from liability for civil damages insofar as their conduct does not

26  violate clearly established statutory or constitutional rights of which a reasonable person

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS                              17                        ATTORNEY GENERAL OF WASHINGTON
                                                                                          Corrections Division
                                                                                          P.O. Box 40116
                                                                                          Olympia, WA  98504-0116
                                                                                          (360) 586-1445

1   would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Prison officials are

2   protected by qualified immunity unless they violate clearly established law of which a

3   reasonable person would have known.  *Id.*  The qualified immunity standard is a generous

4   one.  It "gives ample room for mistaken judgments" by protecting "all but the plainly

5   incompetent or those who knowingly violate the law." *Hunter v Bryant*, 502 U.S. 224, 229

6   (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Because day to day decisions

7   of prison officials are accorded deference by the courts under the principles espoused by *Bell*

8   *v. Wolfish*, 441 U.S. 520 (1979), these officials are entitled to a corresponding

9   accommodation if a reasonable error in judgment is made.  "This accommodation . . . exists

10  because 'officials should not err always on the side of caution' because they fear being sued."

11  *Hunter*, 502 U.S. at 228.

12          A civil rights Plaintiff opposing a claim of qualified immunity must establish the

13  existence of a constitutional violation, clearly established law to support the claim, and that

14  no reasonable official could believe their conduct was lawful.  *Pearson, et al. v. Callahan*,

15  555 U.S. 223 (2009); *Saucier v. Katz*, 533 U.S. 194, 199-200 (2001); *Siegert v. Gilley*, 500

16  U.S. 226, 232 (1991).  The test for qualified immunity is an objective test requiring the

17  Plaintiff to prove a reasonable official could not believe his actions were constitutional.  *See*

18  *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993); *Hunter v. Bryant*, 502 U.S.

19  224, 112 S. Ct. 534, 537 (1991).  Using this standard, Defendants could have reasonably

20  assumed their actions were constitutional.

21          Plaintiff has made claims under the First, Eighth, and Fourteenth Amendments.  The

22  law is clearly established that Defendants may not impose prior restraint on Plaintiff's

23  speech, may not substantially interfere with the exercise of Plaintiff's religion, cannot be

24  deliberately indifferent to Plaintiff's health and safety needs, and cannot violate his rights to

25  due process of law.  The law is also clearly established that Plaintiff is not entitled to a

26  grievance process.  Even if he is entitled to a grievance process, Plaintiff has failed to show

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

18

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

that he has a right to flaunt DOC policies and procedures and file grievances in any manner he sees fit.  In fact, the law to the contrary is clearly established.  As such, Defendants could have reasonably believed they were acting in accordance with clearly established law and are, thus, entitled to qualified immunity as a matter of law.

## VIII.   CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court grant Defendants summary judgment and dismiss Plaintiff's First Amended Complaint, with prejudice, as a matter of law.

RESPECTFULLY SUBMITTED this 21st day of November, 2011.

ROBERT M. MCKENNA
Attorney General


s/ Sara J. Di Vittorio
SARA J. DI VITTORIO, WSBA #33003
Assistant Attorney General

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

19

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445

**CERTIFICATE OF SERVICE**

I certify that on the date below I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participant:

JASON CHRISTEN, DOC #814487
MONROE CORRECTIONAL COMPLEX
PO BOX 7002
MONROE, WA  98272-7002


EXECUTED this 21st day of November, 2011, at Olympia, Washington.


s/ Dawn Walker
DAWN WALKER
Legal Assistant

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT
THEREOF - NO.  C10-5250-BHS-KLS

20

ATTORNEY GENERAL OF WASHINGTON
Corrections Division
P.O. Box 40116
Olympia, WA  98504-0116
(360) 586-1445